FILED

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2013 NOV 27 P 2: 35

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation, Plaintiff, v. MARGARET A. FOCARINO, in her capacity as Acting Director of the United States Patent and Trademark Office, and The UNITED STATES PATENT AND TRADEMARK OFFICE, Defendants. | Civil Action No. 1:13CV1464 AJT/JFA |

# COMPLAINT

Plaintiff Autodesk, Inc. ("Autodesk"), by and through its undersigned counsel, hereby files this civil action against Defendants Margaret A. Focarino, in her capacity as the Acting Director of the United States Patent and Trademark Office ("USPTO"), and the USPTO (collectively, "Defendants"), alleging the following on personal knowledge and on information and belief.

## NATURE OF THE ACTION

This is a civil action brought pursuant to Section 21(b) of the U.S. Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1071(b), to challenge and reverse a September 30, 2013 decision of the Trademark Trial and Appeal Board ("TTAB") of the USPTO. In that decision, the TTAB declined to find acquired distinctiveness for Autodesk's DWG trademark, declined to grant protection for Autodesk's DWG trademark, and refused to grant trademark protection for

certain other DWG-related trademarks referenced in that decision. Review of the facts in the USPTO Administrative Record, together with new evidence to be introduced in this case, demonstrates that the TTAB decision must be reversed and that the Defendants must be directed to approve the trademark applications at issue.

## THE PARTIES

1. Plaintiff Autodesk is a Delaware corporation with its principal place of business at 111 McInnis Parkway, San Rafael, California, 94903. Autodesk is a world leader in developing design software for a variety of industries, including the building and construction industries, the manufacturing industry, and the media and entertainment industries.

2. Defendant Margaret A. Focarino is the Acting Director of the USPTO and the Deputy Under Secretary of Commerce for Intellectual Property, with a business address at 600 Dulany Street, Alexandria, Virginia 22314.

3. Defendant USPTO is an agency of the United States within the United States Department of Commerce. The USPTO is located at 600 Dulany Street, Alexandria, Virginia 22314.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 21(b) of the Lanham Act, as amended, 15 U.S.C. § 1071(b), which provides that a party dissatisfied with a decision of the TTAB may commence a civil action in federal district court challenging the decision.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(A) and 35 U.S.C. § 1(b).

## FACTUAL BACKGROUND

6. Since the 1980s, Autodesk has developed and distributed computer software enabling architects, engineers, and other design professionals to build two-dimensional and three-dimensional virtual models of buildings, products, and other physical objects. Autodesk's computer-aided design ("CAD") software is used, for example, by architects and engineers to design and build skyscrapers, bridges, and other complex projects, and by manufacturers to design products of all kinds.

7. Autodesk refers to the technology supporting many of its CAD software products, such as its flagship AutoCAD® product, as "DWG™ technology." DWG™ technology includes a proprietary method for storing designs as computer files. Since the release of AutoCAD® in 1982, this technology has enabled users of Autodesk software to create, edit, or view computer files in a .dwg file format. Users of Autodesk software have created, edited, or viewed billions of designs with the .dwg file format.

8. Autodesk's software with DWG™ technology has been used by millions of people. Moreover, a substantial portion of the billions of dollars in Autodesk's cumulative revenue is derived from the sale of software featuring DWG™ technology.

9. Autodesk has taken a number of steps to encourage and condition users of CAD software to treat the mark DWG as an indicator of origin for Autodesk's technology and products and services.

10. Since the 1990s, Autodesk has branded a number of its software products, development kits, and product features with DWG-related marks, such as DWG UNPLUGGED, DWG ONLINE, 100% PURE AUTOCAD DWG, and REALDWG.

11. Since 2003, Autodesk's software has utilized a distinctive file icon for opening and saving .dwg files. This file icon prominently features the mark DWG. The latest iteration of this icon appears on users' computer screens as follows:



12. Since 2006, the product boxes for Autodesk's software featuring DWG™ technology have displayed a distinctive DWG logo identical to the one above.

13. Since 2006, Plaintiff has included on its website at <www.autodesk.com> a prominent notice that DWG is Plaintiff's trademark and has published guidelines concerning proper third-party use of DWG.

14. Since 2006, Autodesk has included on its website at <www.autodesk.com> a Web page dedicated to promotion of the company's DWG™ technology and related software.

15. Since 2008, Autodesk has registered and used the Internet domain name <dwg.com>, which Autodesk has directed to a Web page promoting the company's DWG™ technology and related software.

16. In 2013, Autodesk obtained exclusive rights to the generic top-level Internet domain name ("gTLD") .dwg. Autodesk intends to use this gTLD to promote Autodesk's DWG™ technology and related software.

17. In sum, as a result of Autodesk's longstanding use and promotion of DWG and DWG-related marks, DWG has become distinctive as applied to Autodesk's software and services. The primary significance of the mark DWG in Autodesk's field of business is to identify the source of Autodesk's DWG™ technology and related products and services.

18. Autodesk has registered DWG and/or a stylized DWG logo as trademarks in leading global commercial jurisdictions, including Australia, Benelux, Brazil, Canada, China, France, Germany, Ireland, Italy, Japan, Korea, Mexico, Russia, Spain, and the United Kingdom.

19. Businesses that compete with Autodesk have reverse-engineered Autodesk's DWG™ technology in order to incorporate the .dwg file format into their software products. Many of these businesses have then publicly used the designation DWG to communicate to consumers the interoperability of their products with Autodesk's DWG™ technology.

20. For years a major trade organization representing approximately 1,300 businesses in the field of CAD software has publicly acknowledged that DWG is Autodesk's trademark.

21. Autodesk is not seeking via any of its DWG-related trademark filings or this lawsuit to establish exclusive trademark rights to the .dwg computer software file format. Rather, Autodesk is seeking recognition of the goodwill and reputation associated with its DWG-related marks and to deter confusingly similar marks in third-party marketing and advertising.

## SUMMARY OF PROCEEDINGS BEFORE THE USPTO

22. On April 3, 2006, Autodesk filed an application to register the mark DWG on the USPTO's Principal Register. This application was assigned Serial No. 78852798 (the "DWG Application").

23. On April 3, 2006, Autodesk filed applications to register the marks DWG TRUEVIEW, DWG TRUECONVERT, and DWG EXTREME and for the following design mark, all on the USPTO's Principal Register:



These additional applications were assigned, respectively, Serial Nos. 78852813, 78852813, 78852822 and 78852808 (collectively, the "DWG Composite Applications").

24. The DWG Application and the DWG Composite Applications (collectively, the "Applications") contain the following identification of goods in International Class 9:

> computer software for data management and creation and manipulation of engineering and design data, particularly adapted for engineering, architecture, manufacturing, building, and construction applications, together with instruction manuals sold as a unit; computer-aided design software; computer software for animation, graphics and design modeling applications.

25. The USPTO reviewed the Applications and issued various Office Actions, refusing registration altogether for the DWG Application and refusing registration of the DWG Composite Applications absent a disclaimer of exclusive rights to DWG. The USPTO maintained that DWG is understood as shorthand for the word "drawing," that the mark is merely descriptive of Autodesk's goods, and that the mark is thus unprotectable.

26. Autodesk did not concede the USPTO's finding of descriptiveness but elected instead to demonstrate acquired distinctiveness for the mark DWG.

27. Autodesk submitted to the USPTO extensive evidence of acquired distinctiveness for the mark DWG, including, but not limited to, company declarations, a consumer survey, third-party declarations, examples of use of DWG-related marks, examples of DWG software icons, software packaging displaying DWG-related marks, user data, revenue data, and

dictionary definitions associating the DWG mark with Autodesk, as well as examples of Autodesk's longtime use and promotion of the .dwg file extension.

28. On June 9, 2011, the USPTO issued Final Office Actions against the Applications, maintaining the refusals.

29. On December 8, 2011, Autodesk filed Notices of Appeal with the TTAB, seeking reversal of the USPTO's determinations and requesting approval of the Applications. The TTAB consolidated these appeals.

30. On September 30, 2013, the TTAB issued an order affirming: the findings that DWG is merely descriptive of Autodesk's goods and that Autodesk's evidence of acquired distinctiveness is insufficient; the refusal to register the DWG Application; and the refusal to register the DWG Composite Applications absent a disclaimer of exclusive rights to DWG.

31. The TTAB erred in holding that the DWG mark is insufficiently distinctive to qualify for a trademark registration on the USPTO's Principal Register.

32. The TTAB erred in not reversing the requirement that the DWG Composite Applications include a disclaimer of exclusive rights to DWG.

33. The TTAB erred in not reversing the refusals to register and in not approving the Applications for publication.

## COUNT ONE
### (Request for Adjudication Under Section 21(b) of the Lanham Act)

34. Autodesk incorporates by reference each of the preceding paragraphs as if fully set forth herein.

35. Section 21(b) of the Lanham Act provides that whenever a person "is dissatisfied with the decision" of the TTAB and commences "a civil action" to challenge the decision, as in this case, the "court may adjudge that an applicant is entitled to a registration upon the

application involved" or may decide "such other matter as the issues in the proceeding require, as the facts in the case may appear."

36. Section 21(b) of the Lanham Act further provides that "[s]uch adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law."

37. In making such adjudication, this Court must consider any and all new evidence and testimony submitted by the party who is dissatisfied with the TTAB's decision.

38. In this case, the facts described above demonstrate that the decision of the TTAB dated September 30, 2013 should be reversed and that the Court should enter an Order:

    a. finding that Autodesk has established acquired distinctiveness for the mark DWG;

    b. reversing the TTAB's refusal to register the DWG Application;

    c. reversing the TTAB's refusal to register the DWG Composite Applications without a disclaimer; and

    d. requiring the Director to take actions consistent with the Court's decision, including to approve for publication the DWG Application and the DWG Composite Applications.

## NOTICE OF NEW EVIDENCE AND REQUEST FOR *DE NOVO* REVIEW

39. Autodesk intends to: (a) introduce evidence in this case, beyond that which was considered by the USPTO; (b) develop and pursue such new evidence to the full extent permitted by the Federal Rules of Civil Procedure and Federal Rules of Evidence; and (c) request that this Court undertake *de novo* review for any factual disputes in this case.

## PRAYER FOR RELIEF

WHEREFORE, Autodesk respectfully requests that the Court enter a judgment in its favor, including by granting the following relief:

1. That this Court reverse the decision of the TTAB, dated September 30, 2013;

2. That this Court declare that the DWG mark has achieved acquired distinctiveness as applied to Autodesk's software and related services;

3. That this Court direct Defendants to approve the DWG Application for publication;

4. That this Court direct Defendants to approve the DWG Composite Applications for publication without a disclaimer; and

5. That this Court grant to Autodesk any and all additional and further remedies and relief, both at law and in equity, to which Autodesk otherwise may be entitled under the circumstances, and upon the facts proven at trial.

Dated: November 27, 2013

VENABLE LLP

By: /Randall K. Miller/
Randall K. Miller
VSB No. 70672
Nicholas M. DePalma
VSB No. 72886
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
(703) 905-1449 (Telephone)
(703) 821-8949 (Facsimile)
rkmiller@venable.com
nmdepalma@venable.com

9

OF COUNSEL:

John L. Slafsky*
Matthew J. Kuykendall*
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050
(650) 493-9300 (Telephone)
(650) 565-5100 (Facsmile)
jslafsky@wsgr.com
mkuykendall@wsgr.com
   *Subject to Admission Pro Hac Vice

Counsel to Plaintiff Autodesk, Inc.